IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

```
                                   *
THE ESTATE OF JOSEPH L.
BROCCOLINO, JR. ET AL.,            *

     Plaintiffs,                   *      CIVIL NO.: WDQ-05-0438

v.                                 *

MCKESSON CORPORATION, ET AL.,      *

     Defendants.                   *

 *    *    *    *    *    *    *    *    *    *    *    *    *
```

MEMORANDUM OPINION

In this diversity action, The Estate of Joseph L.
Broccolino, Jr. and Adelinda Broccolino, Joseph Broccolino's wife
and primary caregiver, (the "Broccolinos") have sued, *inter
alia*,[1] Tyco Healthcare Group, LP., a/k/a The Kendall Company,
("Tyco") for negligence, strict liability, and breach of implied
warranties[2] in the sale of an allegedly defective adult
incontinence brief that burned Judge Broccolino.

Pending is Tyco's motion for summary judgment on the
remaining counts of the Amended Complaint, Counts III, VI, and
IX.  For the reasons discussed below, Tyco's motion will be
granted in part and denied in part.

---

[1] On May 15, 2006 this Court granted summary judgment to
defendants McKesson Corporation, Inc. and McKesson Medical-
Surgical Minnesota Supply, Inc.

[2] The Broccolinos alleged breach of the implied warranties
of merchantability and fitness for a particular use.  Am. Compl.
¶ 66.

I.   Background

The Broccolinos allege that on January 26, 2002, the decedent suffered severe and painful burns and rashes while wearing Kendall Wings Choice Plus, a brand of adult incontinence briefs (the "briefs").  Am. Compl. ¶ 6.[3]  The Broccolinos claim that the briefs caused the burns and seek to hold Tyco accountable for the harm caused by its manufacturing under three theories: 1) negligence; 2) strict liability; and 3) breach of implied warranties.  *Id.* at Counts III, VI, IX.  On February 14, 2005, this action was removed to this Court from the Circuit Court for Baltimore City.

II.   Analysis

Tyco has moved for summary judgment on the remaining counts arguing that the Broccolinos cannot prove that: 1) the briefs contained a defect; or 2) the defective briefs caused the injuries suffered.  The Broccolinos respond, arguing that expert testimony is not needed to prove that the briefs were defective or that the briefs caused the injuries.

A.   Standard of Review

Under Rule 56(c), summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v.*

---

[3] Judge Broccolino died on January 28, 2003. Am. Compl. ¶ 1.

*Catrett*, 477 U.S. 317, 322 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must view the facts and reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The opposing party, however, must produce evidence upon which a reasonable fact finder could rely.  *Celotex*, 477 U.S. at 317.  The mere existence of a "scintilla" of evidence is insufficient to preclude summary judgment.  *Anderson*, 477 U.S. at 252.

B.   Strict Liability

The Maryland Court of Appeals adopted strict liability for products in *Phipps v. General Motors Corp.*, 278 Md. 337, 353 (1976).  Maryland has specifically elected to follow the Restatement (Second) of Torts § 402A.  *Klein v. Sears, Roebuck and Co.*, 92 Md.App. 477, 484 (1992).  To recover in a strict liability case, the Broccolinos do not need to prove any specific act of negligence, they need only show that: 1) the product was in a defective condition, and 2) unreasonably dangerous at the time it was sold.  *Id*. at 484-85. Maryland adopted strict liability in tort to "relieve plaintiffs of the burden of proving specific acts of negligence by permitting negligence to be

implied where plaintiffs can prove" the § 402A elements. *Id*. at 493.

Courts divide defects into two categories: 1) manufacturing defects, in which the defect occurs during the manufacturing process and the product does not conform to the manufacturer's standards; and 2) design defects, in which the characteristic determined to be a defect was actually intended by the manufacturer. *Id*. at 485.  In a manufacturing defect case, the focus is on the "conduct of the manufacturer" and "the product does not function as the manufacturer intended." *Id*.

Tyco argues that the Plaintiffs cannot prove that the briefs were defective.  The Court rejects Tyco's assertion that "there can be no inference of a manufacturing defect where the circumstantial evidence does not *eliminate* other potential causes."  Reply Mem. at 3 (citing *Virgil v. "Kash N' Karry" Service Corp.*, 61 Md.App 23, 32 (1984))(emphasis added).  The *Virgil* court stated that "[a]n inference of a defect *may be drawn* from the happening of an accident, where circumstantial evidence *tends to eliminate* other causes, such as product misuse or alteration." *Virgil*, 61 Md.App at 32 (emphasis added).  Indeed, "[w]hen a product fails to meet the reasonable expectations of the user, the inference is that there was some sort of a defect, a precise definition of which is unnecessary." *Virgil*, 61 Md.App. at 31 (citations omitted).

4

Tyco does not argue that the decedent misused or altered the briefs; Tyco instead argues that there is no evidence of a chemical on the briefs and relies on unsubstantiated speculation that the burns could have been caused by: 1) the decedent's urine or feces; 2) the application of a contaminated ointment; or 3) "natural dermal deterioration" from being bedridden and unchanged.  Reply Mem. at 3.

Here, the painful burns and skin rashes were *only* found in and around the decedent's pelvis, the only area in contact with the briefs, and resulted in his transportation to Bayview Medical Center by ambulance for treatment.  Mem. Opp. Mot. for Summ. J. (Ex. 1 Affidavit of Adelinda Broccolino ¶¶ 8, 9).  The decedent was awoken by the burning just a few hours after his wife placed the briefs on him.  *Id*. ¶¶ 7-8.  The briefs that allegedly caused the burns were the first pair to be removed from a freshly opened case that was purchased directly from Tyco.  *Id*. ¶¶ 6-7.  In addition, the decedent's discharge summary from Johns Hopkins Bayview Medical Center stated that dermatology saw him and agreed that the injuries were "most likely a contact dermatitis caused by the new diapers."  Mem. Supp. Mot. Summ. J. (Ex. 13 Medical History of Joseph Broccolino, Discharge Summary at 2).

The evidence tends to eliminate other causes; for example, the decedent had utilized a Foley catheter at the time of the accident so urine likely could not have contributed to the

injuries.  Adelinda Aff. ¶ 4.  Since being bedridden, he had not experienced bed sores or rashes.  *Id*. ¶ 3.  The location and timing of the burns and the absence of evidence regarding caustic excrement or ointment would allow a reasonable jury to infer that the briefs had a defect and that the defect caused the burning suffered.

Moreover, it is not necessary for the Broccolinos to produce expert testimony to establish the existence of a defect.  *See Virgil*, 61 Md.App at 31.  Expert testimony is hardly necessary, given the timing and location of the burns, to establish that incontinence briefs that result in burns are defective.

As the uncontradicted evidence demonstrates that the briefs were the first pair removed from a freshly opened box, a reasonable jury could find that the briefs were unreasonably dangerous when sold.

In conclusion, the circumstantial evidence presented and the reasonable inferences that might be drawn therefrom generate a genuine issue of material fact as to whether the briefs were defective and whether that defect caused the decedent's injuries.

C.   Breach of Implied Warranties

To support their claim that Tyco breached an implied warranty of merchantability,[4] the Broccolinos must prove that: 1) a warranty existed; 2) the warranty was breached; and 3) the breach proximately caused the injury. *Giant Food*, 273 Md. 592, 602 (1975). Here, the seller is a merchant of incontinence briefs and so a warranty of merchantability is implied in the sale. *See Virgil*, 61 Md.App. at 29. To be merchantable, the briefs must "at least be fit for the ordinary purposes for which they are sold." *Id*.

Recovery under implied warranty and strict liability require proof of the same three basic evidentiary elements: 1) a defect; 2) attribution of the defect to the seller; and 3) a causal relationship between the defect and the injury. *Id*. at 30. In identifying the similarity between the proof necessary under strict liability and breach of warranty, the *Virgil* Court has essentially restated the *Giant Food* Court's "breach of warranty" element as its first two elements: presence of a defect and attribution to the seller. Moreover, to recover for breach of implied warranty, the Broccolinos need only prove that the briefs did not conform to the warranty at the time it left control Tyco; they need not prove Tyco's negligence. *Giant Food*, 273 Md. at 607. As a result of the similarities in proof required, the

---

[4] The Amended Complaint also alleges a breach of the implied warranty of fitness for a particular use.

7

Broccolinos' breach of implied warranty count will survive
summary judgment for the reasons discussed above in the strict
liability section.

D.   Negligence

     To prove negligence under Maryland law, a plaintiff must
prove that: 1) the defendant was under a duty to protect the
plaintiff from injury; 2) the defendant breached that duty; (3)
the plaintiff suffered actual injury or loss; and (4) the loss or
injury proximately resulted from the defendant's breach of the
duty.  *Valentine v. On Target, Inc.*, 353 Md. 544, 549 (1999).

     The Broccolinos assert that the chemical that caused the
burns was on the briefs as a result of negligent cleaning of
Tyco's machinery, which is conducted routinely and after
shutdowns.  Tyco argues that the Broccolinos cannot prove
negligence because there is no evidence of a breach of duty.

     Specifically, Tyco contends that the deposition of John
Fitter, Tyco's corporate representative regarding the
manufacturing and maintenance processes, precludes a finding of
negligent manufacturing that could have left a chemical on the
briefs.  The manufacturing process ensures that at least the
first 35 briefs are discarded on every startup following a
shutdown for maintenance or cleaning and these briefs remove any
contaminants left from the cleaning process.  Mem. Supp. Mot.

8

Summ. J. (Ex. 12 Deposition of John Fitter at 112).  The Broccolinos do not identify any countervailing evidence of negligence.

In addition, the doctrine of *res ipsa loquitor* cannot remedy the Broccolinos inability to prove a breach of duty.  The doctrine does not apply in defective product cases when plaintiffs infer "as a conclusion of fact what it was that did the injury."  *Jensen v. American Motors Corp., Inc.*, 50 Md.App. 226, 232 n.2 (1981) (the doctrine applies when plaintiffs infer "from a known or proven act occasioning the injury that there was negligence in the act that did produce the injury") (citations omitted); *Wood v. Toyota Motor Corp.*, 134 Md.App. 512, 518 n.6 (2000) (*res ipsa loquitor* does not apply when proving a defect in a products liability case).  The Broccolinos, without direct evidence of chemical contamination, rely solely on the inference of a defect and thus cannot prove negligence.

III. Conclusion

For the reasons discussed above, Tyco's motion will be granted in part and denied in part.


December 13, 2006                    _____/s/_____
Date                                 William D. Quarles, Jr.
                                     United States District Judge


9